[Crim. No. 4754. Fifth Dist. May 26, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
WILLIE FLOWERS, Defendant and Appellant.

586

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Antonia D. Radillo, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and Ward A. Campbell, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

HANSON (P. D.), Acting P. J.—This appeal presents two sentencing questions: appellant claims that imposition of a concurrent term for an assault violates Penal Code section 654's prohibition against double punishment because the assault was merely incidental to a robbery, and that a three-year enhancement for a prior prison term served for a robbery conviction with great bodily injury under Penal Code section 667.5, subdivision (a), was improper.

Appellant was convicted of the robbery of Robert Clark (Pen. Code, § 211) in count one, and the infliction of great bodily injury on Clark (Pen. Code, § 12022.7); appellant admitted he had previously served prior separate prison terms within Penal Code section 667.5, subdivisions (a) and (b). He was convicted of assault by means of force likely

to produce great bodily injury upon Clark in count two (Pen. Code, § 245, subd. (a)).[1]

The court found circumstances in aggravation and imposed the upper term of five years for the robbery (count one) plus a three-year enhancement for infliction of great bodily injury (Pen. Code, § 12022.7) and one- and three-year enhancements for the prior prison terms admitted (Pen. Code, § 667.5, subds. (a), (b)), for a total state prison sentence of twelve years. The court also imposed the aggravated term of four years in the assault count (count two), and ordered this term to run concurrently with the term imposed in count one.

### FACTS

Robert Clark, a boilermaker from Downey, was in Bakersfield working on a tank-building job on August 20, 1979. Clark had returned that morning from the Los Angeles area, carrying almost $1,300 in cash in his pants pockets. After dinner, Clark checked into the Tower Motel where he had been staying for more than six weeks. Later, Clark left his room to get food at the Foster Freeze; as he returned, a woman approached and asked to use his telephone. Clark pointed out a nearby pay telephone, and started to enter the room. The woman tried to push her way into the room and Clark tried to push her out. During the scuffle, Clark heard the woman yell to someone to "'Come here.'" Clark caught a brief glimpse of a figure coming toward him and then Clark was struck over the right eye.

Clark apparently was rendered unconscious by the blow, which opened a cut in his forehead requiring 10 stitches. The victim next realized that he was lying on his back on the bed with appellant on his chest, choking him with both hands. Clark closed his eyes again and pretended to pass out, thinking that appellant would stop choking him and leave. However, appellant choked him harder, saying, "'Whitey, you son of a bitch, I am going to kill you.'" During the time appellant was on his chest, Clark was aware that the woman was taking off his boots and "working with" his clothes. Clark did not know when his pants and shirt were removed; after the assailants left, he was wearing only one sock and his shorts.

---

[1]Appellant was acquitted of burglary. Brenda Evans, also charged with the robbery, burglary and assault, entered guilty pleas to each of the charges. Evans testified for the defense at trial.

Clark managed to get one of appellant's hands free and tried to flip appellant over. The woman jumped on Clark, biting him on the chest. She said to appellant, "'Well, if the police come I'll say he tried to rape me.'"

Appellant pinned Clark's left hand with his knee and tore off the victim's wristwatch. Appellant then proceeded to hit Clark six to eight blows in the head, spattering blood from the cut in his forehead. Clark was in a dazed condition, but observed his assailants leave in a whitish or beige car immediately after the beating.

Clark notified the police and described the robbers. The pockets of his pants were empty; in addition to the money and his wristwatch, his shirt and a suitcase were gone. Clark was covered with blood; in addition to the cut on his forehead, he suffered a black eye, bruises, a painful throat and a severely cut tongue.

I

Appellant contends that the statutory proscription against double punishment contained in Penal Code section 654[2] precludes imposition of concurrent terms for both the robbery and assault counts because the assault was incidental to, or "part and parcel of" the robbery. (See *People v. Medina* (1972) 26 Cal.App.3d 809 [103 Cal.Rptr. 337].) We agree and modify the judgment.

"[S]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction." (*People v. Perez* (1979) 23 Cal.3d 545, 551 [153 Cal.Rptr. 40, 591 P.2d 63, 3 A.L.R.4th 339]; *People v. Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552].) Although robbery and aggravated assault are separate crimes, where both are part of an indivisible course of conduct with a single objective, imposition of sentence for each violates section 654. (See *People v. Ridley* (1965) 63 Cal.2d 671, 678 [47 Cal.Rptr. 796, 408 P.2d 124].)

---

[2]Penal Code section 654 provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

The question of the applicability of Penal Code section 654 was not raised at the sentencing hearing, but the absence of any objection does not obviate our duty to review the section 654 question. (See *People* v. *Perez, supra,* 23 Cal.3d at pp. 549-550, fn. 3.)

Where, as a matter of law, the uncontradicted evidence shows an indivisible course of conduct for which multiple prison terms were imposed, the proper procedure is for the reviewing court to modify the sentence to stay imposition of the lesser term. (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639-640 [105 Cal.Rptr. 681, 504 P.2d 905]; *People* v. *Miller, supra,* 18 Cal.3d 873, 888.)

*People* v. *Ridley, supra,* 63 Cal.2d 671, 678, and *People* v. *Medina, supra,* 26 Cal.App.3d 809, 824, involving robberies with incidental assaults, are illustrative. In *Ridley,* the assault occurred when one of the victims tried to resist; the court found that the assault was the means of perpetrating the robbery. (*Ridley, supra,* at pp. 673, 678.) In *Medina,* while the robbery victim was being bound and gagged, he was hit with something hard. (*Medina, supra,* at p. 824.) The court said: "The assault by [defendant] was the means of committing the robbery and was merely incidental to the primary object of robbing [the victim]." (*Ibid.*)

Respondent argues that the course of conduct is divisible because the evidence supports an inference that appellant possessed distinct and independent objectives to rob and assault Clark. On the contrary, it seems clear that the whole purpose of the confrontation in the motel room was to commit a robbery. After Clark's pants and shirt were removed, as he struggled even his watch was ripped from his arm. The vicious assault knocking Clark unconscious at the beginning of the encounter indicated the assailants' desire to quiet Clark immediately so the robbery could be completed with dispatch. The aggravated assault by appellant provoked resistance from the victim, which led to further severe blows by the robber. We conclude that this case falls within those situations where the assault was to perfect the robbery: during the affray, the robbers took Clark's money, his wristwatch, shirt, and a suitcase; they emptied his pockets. The evidence supports overwhelmingly the conviction of robbery and the finding of infliction of great bodily injury during the robbery, as well as the conviction of assault. Section 654 does not prevent appellant's being convicted for both robbery and assault; it proscribes his being punished for both of the convictions. (See *People* v. *Miller, supra,* 18 Cal.3d 873, 886.)

*People* v. *McGahuey* (1981) 121 Cal.App.3d 524, 528-530 [175 Cal.Rptr. 479], cited by respondent, is distinguishable. In *McGahuey*, the court upheld consecutive sentences for burglary and assault with a deadly weapon where defendant, after burglarizing the victim's house, threw a hatchet at the victim through a closed window as she started to call the police. The court held that the intent to commit the assault was formed after the burglary was complete, justifying separate punishment.

In the *Ridley* case, *supra*, 63 Cal.2d 671, the assailant leaned over the counter and shot the victim three times; in *Medina, supra*, 26 Cal. App.3d 809, after the robbery victim was bound and gagged, a wallet taken from his pocket, and other items taken from the house, the victim was hit over the head. The *Ridley* and *Medina* courts applied section 654 of the Penal Code, holding in each case that the robbery and assault constituted a single indivisible transaction. (See *People* v. *Logan* (1953) 41 Cal.2d 279, 290 [260 P.2d 20].)

Because the convictions herein arose out of an indivisible course of conduct, the concurrent sentence for the assault violates section 654's prohibition of double punishment. The trial court imposed concurrent sentences, but, instead, the court should have stayed the sentence imposed upon the less serious offense in count two until the sentence imposed on the robbery in count one was served, the stay then to become permanent. We modify the judgment accordingly. The total prison term, however, remains the same—12 years.

## II

■ Appellant next attacks the trial court's imposition of a three-year enhancement for a prior violent felony term under Penal Code section 667.5, subdivision (a), arguing that under *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], and *People* v. *Davis* (1980) 103 Cal.App.3d 270 [163 Cal.Rptr. 22], appellant's prior conviction of robbery with great bodily injury will not support the enhancement because subdivision (c) (8) of Penal Code section 667.5 does not provide for such a penalty. We disagree.

In *Harvey*, the California Supreme Court construed the language of former Penal Code section 1170.1, subdivision (a), concerning enhancement of consecutive terms to permit enhancement of the subordinate term *only* when the consecutive crime is one specifically listed in Penal

Code section 667.5, subdivision (c), thus excluding offenses under section 667.5, subdivision (c)(8), which includes as violent felonies, any felony with great bodily injury or firearm use. (*People* v. *Harvey, supra*, 25 Cal.3d at pp. 760-761.)[3] The *Harvey* court found the language of section 1170.1, subdivision (a), to be ambiguous and stated: "[T]o construe section 1170.1, subdivision (a), as permitting the enhancement of defendant's consecutive offense solely by reason of his commission of a felony involving use of a firearm would result in a troublesome anomaly: As so interpreted, section 1170.1 would permit enhancement for firearm use *in any case involving firearm use*, thereby seeming to render wholly unnecessary the section's specific statutory reference to the various violent felonies described in section 667.5, subdivision (c)." (*Ibid.*)

In *People* v. *Davis, supra*, 103 Cal.App.3d 270, the defendant was convicted of attempted robbery with personal use of a firearm. The trial court further imposed a three-year enhancement under section 667.5, subdivision (a), upon a finding that defendant had previously been convicted of robbery with use of a firearm. The reviewing court held that the discussion construing section 1170.1 in *Harvey* governed the interpretation of section 667.5 as well, and therefore robbery with use of a firearm or infliction of great bodily injury was *not* a violent felony for purposes of section 667.5, subdivision (a). (*Id.*, at pp. 278-279.)

We consider that *Davis* incorrectly applied *Harvey* to a different statute, the language and intent of which are clear. The Supreme Court's recent decision in *People* v. *Hernandez* (1981) 30 Cal.3d 462 [179 Cal.Rptr. 239, 637 P.2d 706], analyzing a different portion of section 1170.1, subdivision (a), supports our conclusion.

In *Hernandez*, the Supreme Court addressed the effect of *Harvey* on the provision for limitation of subordinate terms in section 1170.1, subdivision (a), which distinguishes between those offenses listed in subdivision (c) of section 667.5 and other, nonviolent, offenses. The court limited the *Harvey* analysis to interpretation of the single portion of 1170.1 addressed in the *Harvey* case, and finding no ambiguity in the reference to section 667.5, subdivision (c), relating to limitation on computation of the total of subordinate terms, gave effect to the clear legislative intent "to punish more severely those crimes in which a firearm is used or great bodily injury inflicted . . . ." (*Id.*, at p. 468.)

---

[3]The Legislature has since amended section 1170.1, subdivision (a), to specifically include section 667.5, subdivision (c)(8), violent felonies. (Stats. 1980, ch. 132.)

Justice Kaus, writing for a unanimous court, explained: "The dichotomy between this case and *Harvey* arises from the fact that section 1170.1, subdivision (a) borrowed the definition of 'violent felony' for two different purposes.[5] Yet, on occasion, as *Harvey* illustrates, transposition of a definitional statute without refinement of language to accommodate the incorporating statute results in ambiguity, inconsistency, or superfluous language. Thus, if section 1170.1, subdivision (a) were interpreted to employ the statutory definition in section 667.5 to permit enhancement of a consecutive term for firearm use or great bodily injury as to any violent felony, the listing of the seven named felonies would be redundant. (*Harvey, supra*, 25 Cal.3d 754.) In contrast, the use of the statutory definition in section 667.5 to permit unlimited total subordinate terms for consecutive offenses is entirely harmonious with the related provisions. We see no reason not to abide by the clear letter of the statute and the legislative intent manifested by the incorporation of the statutory definition of 'violent felony.'

"[5] The definition itself was fashioned for yet a third purpose: the enhancement of sentences for persons who had served prior prison terms for violent felonies." (*People* v. *Hernandez, supra*, 30 Cal.3d at p. 467.) Certainly, the language of concern here, section 667.5, subdivisions (a) and (c), contains no ambiguities nor inconsistencies.[4]

---

[4]The pertinent portions of the statute provide: "Enhancement of prison terms for new offenses because of prior prison terms shall be imposed as follows: [¶] (a) Where one of the new offenses is one of the violent felonies specified in subdivision (c), in addition and consecutive to any other prison terms therefor, the court shall impose a three-year term for each prior separate prison term served by the defendant where the prior was one of the violent felonies specified in subdivision (c); provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of 10 years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction. [¶] (b) Except where subdivision (a) applies, where the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which defendant remained free of both prison custody and the commission of an offense which results in a felony conviction. [¶] (c) For the purpose of this section, 'violent felony' shall mean any of the following: [¶] (1) Murder or voluntary manslaughter. [¶] (2) Mayhem. [¶] (3) Rape as defined in subdivision (2) of Section 261. [¶] (4) Sodomy by force, violence, duress, menace, or threat of great bodily harm. [¶] (5) Oral copulation by force, violence, duress, menace, or threat of great bodily harm. [¶] (6) Lewd acts on a child under 14 as defined in Section 288. [¶] (7) Any felony punishable by death or imprisonment in the state prison for life. [¶] (8) Any other felony in which the defendant inflicts great bodily injury on any person other than an accomplice which has been charged and proved as provided for in Section 12022.7 on or after July 1, 1977, or as specified prior to July 1, 1977, in Sections 213,

Penal Code section 667.5 is a central provision of the Determinate Sentencing Law; its express purpose is to lengthen prison terms substantially for repeat violent offenders *in addition to any other enhancements imposed.* This section replaces the previous habitual offender statutes and is "the sole means of directly taking into account a violent and criminal past." (See April Cassou and Brian Taugher, *Determinate Sentencing in California: The New Numbers Game* (1978) 9 Pacific L.J. 5, 50.) By the terms of the statute, appellant, who has twice been convicted of robbery with infliction of great bodily injury, is subject to the three-year enhancement under subdivision (a). The holding in *Davis*, mechanically applying *Harvey* in a context where it defeats the legislative purpose, was overruled by implication in *Hernandez.* The three-year enhancement was imposed properly by the trial court.

The judgment is modified; execution of the sentence imposed in count two (assault by means of force likely to produce great bodily injury) is stayed pending the finality of this judgment and service of the sentence in count one (Pen. Code, § 654); the stay is to become permanent upon completion of the term imposed in count one. The prison term of 12 years remains the same.

The trial court is directed to correct the abstract of judgment as indicated above and to forward a corrected certified copy to the Department of Corrections; the department will modify its records accordingly. As modified, the judgment is affirmed.

Andreen, J., and Cantwell, J.,* concurred.

---

264, and 461, or any felony in which the defendant uses a firearm which use has been charged and proved as provided in Section 12022.5. [¶] The Legislature finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for such extraordinary crimes of violence against the person."

*Assigned by the Chairperson of the Judicial Council.