Filed 5/7/13  P. v. Wallace CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>AARON WALLACE,<br><br>  Defendant and Appellant. | A134614<br><br>(Marin County<br>  Super. Ct. No. SC171212A) |

Following denial of defendant's motion to recuse the Marin County District Attorney's Office and the deputy assigned to his case, he was convicted by a jury of residential burglary (§ 459) and assault with a deadly weapon (§ 245, subd. (a)(1)).[1]  He claims on appeal that the trial court erroneously denied his recusal motion (§ 1424).  We conclude that the denial of the recusal motion was not a prejudicial abuse of discretion, and affirm the judgment.

## STATEMENT OF FACTS[2]

Defendant was convicted of offenses that occurred at a two-level apartment residence occupied by his sister, Saprina Wallace, mother Rosemary Wallace, sister Terressa Harris, and nephew Labron Wallace, and visited frequently by others in the

---

[1] All further statutory references are to the Penal Code.

[2] In this appeal defendant only challenges the denial of his motion to recuse the prosecutor. Therefore, our recitation of the facts will focus on the facts pertinent to the issue presented, rather than the underlying crimes.

family.[3]  Testimony was presented, primarily by defendant's niece Tequoia McDonald, that on the morning of July 20, 2010, defendant appeared at the apartment on two occasions and engaged in altercations with Harris, apparently over some of defendant's belongings in the residence.  Early the same afternoon, defendant returned to the apartment and kicked open the front door.  From the upper level of the residence McDonald heard the "bang" and ran to the stairs.  She observed defendant in the living room below "holding a tennis racket and a knife" in his hands, "as if he was gonna hit someone with" them.  Defendant appeared to McDonald to be in a state of mind "that he was going to come in and kill" her or Saprina.  Defendant approached Saprina, who was seated on the couch.  Saprina ran upstairs, as did McDonald.  They declared that they were "calling the police."  Both Saprina and McDonald were "shocked and scared."  After pausing at the front door, defendant ran out of the apartment.

While defendant was in custody in the lockdown unit of the Marin County Jail based on the offenses charged in the present case, he threw urine at a deputy sheriff and inmate, an act known as "gassing," which was charged in a separate case (case No. SC 172093A) as a violation of section 243.9, subdivision (a).  He also received numerous other disciplinary reports while in county jail.

Defendant was involuntarily treated with antipsychotic medication and found mentally incompetent to stand trial.  He was transferred to Atascadero State Hospital on September 23, 2010.  The trial court thereafter found that he was restored to competency, and following a preliminary hearing he was charged in case No. SC171212A with four felony counts: residential burglary (§ 459), assault with a deadly weapon (§ 245, subd. (a)(1)), making a criminal threat (§ 422), and vandalism (§ 594, subd. (b)(1)), along with prior convictions and a prior prison term served.

The case then proceeded before several jury panels.  On April 21, 2011, the first panel was dismissed during voir dire examination and a mistrial was declared after some of the prospective jurors inadvertently observed defendant escorted to a restroom in a

---

[3] For the sake of clarity and convenience we will refer to Saprina Wallace and others in the Wallace family by their first names.

holding cell. A second jury was selected, but defendant repeatedly engaged in disruptive conduct that included direct threats against the prosecutor, Geoff Iida. Defense counsel moved for a mistrial and declared doubt as to defendant's competency. The trial court denied the motion for mistrial and found no evidence of defendant's lack of competence within the meaning of section 1368, but removed defendant from the courtroom and proceeded with the case with defendant sequestered in a holding cell. When four of the fourteen seated jurors subsequently expressed that they could not set aside the disruptive conduct they previously witnessed by defendant, or act fairly and impartially, the court declared a mistrial on April 27, 2011.

On June 17, 2011, the defense moved pursuant to section 1424 to recuse the entire Marin County District Attorney's office and deputy district attorney Geoff Iida individually as prosecutor in this case and case No. SC172093A. Defendant asserted that his prior verbal outburst directed at Iida, who would then be a "complaining witness" in a prosecution against him in a "yet unfiled PC § 422 case" (the section 422 case) created an "obvious conflict" and prevented the office and Iida from acting as a "fair and impartial prosecutor."

The declaration of defense counsel Jon Rankin filed in support of the motion for recusal stated that on June 16, 2011, Iida disclosed that a report of defendant's prior "outburst in court" had been referred to the Attorney General's Office for "possible prosecution as a violation of Penal Code § 422." According to Rankin's declaration, Iida expressed his opinion that both the section 422 case, which occurred in court and on the record, and the charged violation of section 243.9, subdivision (a), committed in jail and essentially admitted by defendant, were "strong" cases. Iida also proposed to Rankin a "package" disposition of the three cases: possible dismissal of the present case, in exchange for guilty pleas to the No. SC172093 case and the not-yet-pending section 422 case. Rankin responded that as a possible witness he was "ethically precluded" from representing defendant in the section 422 case.

In opposition to the motion the prosecution presented Iida's declaration, in which he described the district attorney's office's standard practice of seeking to "settle cases,"

3

and "to attempt to globally resolve all pending and potentially filed charges." Iida declared that on the morning of June 16, 2011, he suggested a disposition to Rankin in which defendant would enter guilty pleas to the No. SC172093A case and the potential criminal threat charge in exchange for dismissal of the charges in the present case, which included "strike" offenses. Later that same day, Rankin told Iida that he did not speak to defendant about the proposed settlement, and indicated he could not ethically participate in global settlement discussions given his status as a potential witness in any criminal threat prosecution against defendant. Iida denied that he characterized any of the cases as strong or weak, or that he accused Rankin of "doing a 'disservice' " to his client by refusing to discuss settlement.

Following a hearing the trial court denied the recusal motion. The court found that defendant failed to demonstrate an "actual conflict of interest in the circumstances" presented. The court was "not convinced" that defendant would fail to "get fair treatment" if Iida and the Marin County District Attorney's Office "persist[] or continue[] on as the prosecutor in this case."

A third jury was empanelled and the case proceeded to trial and a jury verdict on June 24, 2011. The jury found defendant guilty of vandalism as charged in count four, but was unable to reach a verdict on the remaining two counts. As to counts one and two, the court declared a mistrial. The prosecution dismissed count three, the charge of making a criminal threat, due to a perceived lack of supporting evidence. The prior conviction allegations were subsequently found true by the court.

A second trial on the remaining two charges was held in September of 2011. The jury found defendant guilty of burglary and assault with a deadly weapon. At the sentencing hearing on September 20, 2011, upon the prosecutor's request the court dismissed case No. SC172093A, with a *Harvey*[4] waiver. The court stayed a prior prison term allegation and imposed an aggregate sentence of 13 years in state prison.

---

[4] *People v. Harvey* (1979) 25 Cal.3d 754.

## DISCUSSION

In this appeal defendant argues that the trial court erred by denying his motion to disqualify the Marin County District Attorney's Office and Geoff Iida individually from prosecuting the case before us. He maintains that an impermissible conflict is illustrated by the prosecutor's effort to seek "a guilty plea to a felony criminal threats charge (§ 422)," which was still under investigation by the Attorney General's Office, "wherein the prosecutor was the sole victim." Defendant asserts that the prosecutor's offer to settle the case for violation of section 422 in which he was the victim constituted representation of "himself," and "diverged from the prosecution duty 'to seek justice in a fair and evenhanded manner," as required by section 1424. He claims the "trial court's failure to recuse the prosecutor constitutes structural constitutional error that is reversible per se."

We commence our review with recognition of the fundamental principle that "[p]rosecutors are public fiduciaries. They are servants of the People, obliged to pursue impartially in each case the interests of justice and of the community as a whole. When conflicts arise that compromise their ability to do so, they can and should be recused." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 709, fn. omitted.)

"The disqualification of public prosecutors is governed by Penal Code section 1424, which provides that a motion to recuse a prosecutor 'may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial.' [Citations.]" (*County of Santa Clara v. Superior Court* (2010) 50 Cal.4th 35, 54, fn. 11.) "Section 1424 provides that motions to disqualify the district attorney may not be 'granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial.' '[W]hether the prosecutor's conflict is characterized as actual or only apparent, the potential for prejudice to the defendant—the likelihood that the defendant will not receive a fair trial—must be real, not merely apparent, and must rise to the level of a *likelihood* of unfairness. Thus section 1424 . . . does not allow disqualification merely because the district attorney's further participation in the prosecution would be unseemly, would *appear* improper, or would tend to reduce public confidence in the

5

impartiality and integrity of the criminal justice system.' [Citation.]" (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 415.)

" 'Section 1424 sets out the standard governing motions to recuse a prosecutor: such a motion "may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." [Citation.] The statute "articulates a two-part test: '(i) is there a conflict of interest?; and (ii) is the conflict so severe as to disqualify the district attorney from acting?' " [Citations.]' " (*Hollywood v. Superior Court* (2008) 43 Cal.4th 721, 727–728.) For recusal to be granted, the "defendant must demonstrate that fair treatment by the office is unlikely." (*People v. Cannedy* (2009) 176 Cal.App.4th 1474, 1480.)

"Under the first part, a court must determine whether a conflict exists, that is, whether 'the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner.' [Citations.] If such a conflict exists, the court must further determine whether the conflict is ' " 'so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings.' " ' [Citation.] Thus, the first half of the inquiry asks only whether a 'reasonable possibility' of less than impartial treatment exists, while the second half of the inquiry asks whether any such possibility is so great that it is more likely than not the defendant will be treated unfairly during some portion of the criminal proceedings." (*Haraguchi v. Superior Court*, *supra*, 43 Cal.4th 706, 713.)

"[D]efendants bear the burden of demonstrating a genuine conflict; in the absence of any such conflict, a trial court should not interfere with the People's prerogative to select who is to represent them." (*Haraguchi v. Superior Court*, *supra,* 43 Cal.4th 706, 709.) "Disqualification under Penal Code section 1424 is not permissible 'merely because the district attorney's further participation in the prosecution would be unseemly, would *appear* improper, or would tend to reduce public confidence in the impartiality and integrity of the criminal justice system. [Citations.]' [Citation.] Thus, whether the prosecutor's conflict is actual or apparent, it is only disqualifying when the potential for prejudice to the defendant is itself real. Indeed, the potential for prejudice must rise to

6

the level of a likelihood of unfairness." (*Spaccia v. Superior Court* (2012) 209 Cal.App.4th 93, 106.)

"Moreover, '[r]ecusal of an entire district attorney's office is an extreme step. The threshold necessary for recusing an entire office is higher than that for an individual prosecutor.' [Citation.] An entire prosecutor's office should not be recused unless it is necessary to assure a fair trial. The showing of a conflict necessary to justify so drastic a remedy must be especially persuasive." (*Spaccia v. Superior Court*, *supra*, 209 Cal.App.4th 93, 106–107.) The " '[d]isqualification of an entire prosecutorial office from a case is disfavored by the courts, absent a substantial reason related to the proper administration of justice.' [Citation.]" (*People v. Petrisca* (2006) 138 Cal.App.4th 189, 195.)

"Appellate review of a ruling on a recusal motion 'involves both the substantial evidence test and examination for abuse of discretion. Factual issues are resolved under the substantial evidence test: whether there is substantial evidence to support factual determinations reached by the trial court. [Citations.] Once the pertinent factual issues are settled, the question whether the trial court's ruling should be upheld is determined under the deferential abuse of discretion test. [Citations.]' [Citation.]" (*People v. Jenan* (2006) 140 Cal.App.4th 782, 792; see also *People v. Superior Court* (*Humberto S.*) (2008) 43 Cal.4th 737, 746.)

Even if we assume defendant satisfied the first prong of the section 1424 disqualification test – that is, a reasonable possibility of less than impartial treatment – the second half of the inquiry requires a finding that any such possibility is so great it is more likely than not the defendant will be treated unfairly. The record fails to establish the likelihood of unfair treatment of defendant, and in any event we find that defendant did not suffer any actual prejudice.

We disagree with defendant's premise that erroneous denial of his recusal motion constitutes a denial of due process and structural error, at least under the circumstances presented here. The California Supreme Court has concluded "that not all erroneous denials under Penal Code section 1424 result in due process violations . . . ." (*People v.*

*Vasquez* (2006) 39 Cal.4th 47, 51 (*Vasquez*).) The court in *Vasquez* declared: "The question, ultimately, is whether the threat to the integrity of criminal proceedings posed by participation of a prosecutor with a conflict of interest that before trial 'render[ed] it unlikely that the defendant would receive a fair trial' (§ 1424), but which in the event did not demonstrably affect the actual course of the proceedings, justifies a departure from the ordinary rule, grounded in the need for finality of judgments and conservation of judicial resources and embodied in article VI, section 13 of the California Constitution, that to obtain reversal a criminal appellant must show prejudice. At least under the circumstances of this case—where defendants failed to avail themselves of their pretrial remedy by filing a writ petition—we conclude no such departure is justified." (*Id.* at p. 70.) Prejudice from "such a state law error . . . must instead be evaluated under the standard of *People v. Watson* [(1956)] 46 Cal.2d 818 (*Watson*)." (*Id*. at p. 66.)

Here, we are not assessing either the likelihood of unfairness to defendant or prejudice that existed in the potential prosecution of him for the criminal threat offense committed against the prosecutor. Rather, we consider the conflict and prejudice associated with the prosecutor's representation of the People in this separate case for assault and burglary now before us on appeal. Defendant's claim of unfairness is based primarily on the plea offer from Iida that would have dismissed the present charges in exchange for guilty pleas in the other cases. How defendant suffered likelihood of unfairness or prejudice from the prosecutor's offer to dismiss the charges in the *present case* – which subjected him to much greater punishment than the charged offenses in the other pending and yet unfiled criminal actions – is at the very least an entirely speculative matter. The defendant must show the actual likelihood of unfairness, not merely the potential for unfair treatment and actual prejudice. (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 387; *People v. Vasquez, supra,* 39 Cal.4th 47, 56.) The "possibility that a prosecutor might be influenced does not alone establish the requisite likelihood or probability that a defendant will be treated unfairly." (*People v. Gamache* (2010) 48 Cal.4th 347, 363.)

8

Nothing in the record persuades us that Iida's experience with defendant or the conflict that may have resulted from it played a role in his handling of the case to defendant's detriment. (Cf. *People v. Vasquez, supra*, 39 Cal.4th 47, 56–58.) To the extent that any such inference may be drawn from the record, it negates a finding of unfairness or prejudice. The actions of the prosecution during the course of the present action did not demonstrate the slightest unfairness that deprived defendant of a fundamentally fair proceeding. (*People v. Gamache*, *supra,* 48 Cal.4th 347, 365.) The district attorney's office was prepared to dismiss this case if defendant agreed to a global plea to other, less serious crimes. When no plea disposition was reached, the case proceeded to a jury trial and guilty verdicts without any hint of bias or unfairness on the part of the prosecutor appearing in the record. In fact, following the first trial the prosecution dismissed the charge of making a criminal threat, and at the sentencing hearing following the burglary and assault verdicts, case No. SC172093A was dismissed upon the prosecution's motion.

Defendant has not established either a conflict that created a likelihood of unfairness in his trial or the reasonable probability that a result more favorable to him would have been reached in the absence of denial of his recusal motion. We conclude that the trial court did not abuse its discretion by declining to order recusal. (*People v. Gamache*, *supra,* 48 Cal.4th 347, 366; *Spaccia v. Superior Court*, *supra*, 209 Cal.App.4th 93, 107–108.)

Accordingly, the judgment is affirmed.

_____
Dondero, J.

We concur:


_____
Margulies, Acting P. J.


_____
Banke, J.

10